DONALD HUDKINS, SUPT. IND. STATE FARM *v.*
MILTON N. BAROMICH

[No. 1069S239. Filed March 17, 1971. Rehearing denied June 4, 1971.]

*Theodore L. Sendak,* Attorney General, *William F. Thompson,* Assistant Attorney General, *Walter E. Bravard, Jr.,* Deputy Attorney General, for appellant.

*Max Cohen,* of Gary, for appellee.

ARTERBURN, C.J.—This is an appeal from a habeas corpus proceedings in the Putnam Circuit Court wherein the defendant was ordered released from the Indiana State Farm. Defendant was originally sentenced by the Lake Criminal Court to serve two terms of one year each in the Indiana State Farm, commencing on October 21, 1968, the terms to run consecutively. On appeal to this Court, we held the trial court had no authority to order the consecutive terms and therefore we ordered the trial court to modify the judgment and sentence such that the two sentences would run concurrently for a total period of one year. *Baromich* v. *State* (1969), 252 Ind. 412, 249 N. E. 2d 30.

While serving his sentence at the Indiana State Farm, defendant Baromich was suspected by the authorities there to be engaged in trafficking with an employee of the State Farm and on February 12, 1969, he was confined to Administrative Segregation pending further investigation of his alleged violation of the rules of the institution. After our opinion in *Baromich* v. *State, supra,* which was rendered on July 3, 1969, the defendant petitioned for writ of habeas corpus in the Putnam Circuit Court alleging that he was confined at the Indiana State Farm without authority. The Putnam Circuit Court thereafter ordered the defendant released on July 25, 1969.

It is to be noted, however, that on July 18, 1969, the Institutional Disciplinary Board held a hearing at the Indiana State

Farm, resulting in the defendant being deprived of his ■ accrued "good time" due to the alleged trafficking that he had been engaged in while at the State Farm. He therefore was not entitled to be released by the Putnam Circuit Court, since his "good time" was taken away before he could lawfully have been released.

Under our computations, defendant could not be released until September 10, 1969. "Good time" again began to accrue after February 12, 1969, when the defendant was placed ■ in administrative segregation for trafficking with an employee of the Indiana State Farm. Therefore, defendant accrued "good time" as follows, pursuant to Burns Ind. Stat. Ann. (1956 Repl.) § 13-511:

| Date | Good Time | Total Good Time Accrued |
|---|---|---|
| March 12, 1969 | 3 | 3 |
| April 12, 1969 | 4 | 7 |
| May 12, 1969 | 5 | 12 |
| June 12, 1969 | 6 | 18 |
| July 12, 1969 | 7 | 25 |
| August 12, 1969 | 8 | 33 |
| September 10, 1969 (Pro rata) | 8 | 41 |

The one year sentence theoretically would terminate on October 21, 1969. With good time accruing after February 12, 1969, the defendant was entitled to be released on September 10, 1969.

The judgment is reversed. The writ of habeas corpus having been improperly granted, the defendant is ordered recommitted to the Indiana State Farm by the Putnam Circuit Court to serve the remainder of his sentence.

Givan, Prentice, DeBruler and Hunter, JJ., concur.

ON PETITION FOR REHEARING

ARTERBURN, C.J.—This Court reversed the trial court which released the appellee on a writ of habeas corpus (see the opinion dated March 17, 1971.) The appellee has filed his petition

for rehearing and contests the method used by the court in the calculation of his good time. The appellee, as stated in the original opinion, would have been released normally after serving his term on October 20, 1969. He was released by the trial court under its calculation of good time on July 25, 1969. The appellee contends that when he lost his credit for good time, because of an infraction of the rules, his good time should commence running at the higher rate which he would have had if he had not committed the infraction. Our interpretation of the statute is that when an infraction occurs the prisoner starts anew on the scheduled good time credit at the lowest rate of three days for the first month, four days for the second month, etc. progressively.

Burns Ind. Stat. Anno. § 13-511 states:

*"Good-time allowance of prisoners—Indiana State Farm— Correctional department of Indiana Women's Prison.—* Every prisoner who is now or hereafter may be confined in the Indiana State Farm or correctional department of the Indiana Women's Prison and who, while an inmate of said institution, shall have no infractions of the rules and regulations of the institution nor infractions of the laws of the state of Indiana or laws of the United States recorded against him or her, and who performs in a faithful manner the duties assigned to him or her while a prisoner shall be entitled to a diminution of time from his sentence as indicated in the following table, for the respective months of his sentence (including time being served for unpaid fine or costs) and pro rata for any part of a month. In cases of prisoners sentenced for a specified number of days instead of months, good time shall be computed on the basis of thirty (30) days to the month.

| Number of Months of Sentence | Good Time | Total Good Time Made |
|---|---|---|
| 1 | 3 days | 3 days |
| 2 | 4 days | 7 days |
| 3 | 5 days | 12 days |
| 4 | 6 days | 18 days |
| 5 | 7 days | 25 days |
| 6 | 8 days | 33 days |
| 7 | 9 days | 42 days |
| 8 | 10 days | 52 days |

Number of Months
of Sentence | Good Time | Total Good Time Made

| Number of Months of Sentence | Good Time | Total Good Time Made |
|---|---|---|
| 9 | 10 days | 62 days |
| 10 | 10 days | 72 days |
| 11 | 10 days | 82 days |
| 12 | 10 days | 92 days |
| 13 | 10 days | 102 days |
| 14 | 10 days | 112 days |
| 15 | 10 days | 122 days |
| 16 | 10 days | 132 days |
| 17 | 10 days | 142 days |
| 18 | 10 days | 152 days |
| 19 | 10 days | 162 days |
| 20 | 10 days | 172 days |
| 21 | 10 days | 182 days |
| 22 | 10 days | 192 days |
| 23 | 10 days | 202 days |
| 24 | 10 days | 212 days |

"Any prisoner who shall have been sentenced to a term of imprisonment for a longer period of time than twenty-four (24) months shall, in addition to the good time provided in the foregoing table, be entitled to a diminution of ten (10) days per month from his sentence for each month which such prisoner is confined beyond such period of twenty-four (24) months. (Acts 1923, ch. 38, § 1, p. 127; 1943, ch. 28, § 1, p. 59.)"

It is to be noted under this statute that the prisoner is entitled to good time only if he "shall have no infractions of the rules." Burns Ind. Stat. Anno. § 13-512, provides that where a prisoner is found guilty of an infraction of the rules, he may be deprived of the good time gained. The objective of the "good time" statute is to give prison authorities control over the prisoners and induce the prisoners to behave well. With this objective in mind, we feel our interpretation which we have previously stated in our original opinion, carries out more accurately the objective of the statute and gives prison authorities somewhat more latitude.

Under appellee's own calculation, as stated further in his petition for rehearing, he would not have been entitled for release until August 6, 1969. Nevertheless, the trial court released appellee on July 25, 1969.

In view of what we have said, the petition for rehearing is denied.

Givan, DeBruler, Prentice, JJ., concur; Hunter, J., dissents with opinion.

## DISSENTING OPINION

HUNTER, J.—A careful review of the petition for rehearing in this case has led me to believe we must reconsider our earlier decision. The issue here involved is the proper manner of computing the accumulation of good time under the Good-time Statute for the Indiana State Prison. Ind. Ann. Stat. § 13-511 and 512.

In the case at hand appellant was sentenced October 21, 1968, for a one year term. On February 12, 1969, he committed a prison rule infraction which caused his loss of accumulated good time. Since he had at the date of the offense sixteen (16) days accrued this is what he lost. In our opinion of March 17, 1971, we held that after February 12, 1969, the date of the offense, he again began to build up good time credit. Where I believe we erred is in computing his *rate* of accumulation as though he were in the first month of his sentence, that is, at a rate of three days for the first month, etc. The statute (§ 10-512) does not provide for such a change in the accumulation *rate* in addition to the loss of the accumulated time. Rather, appellant should have begun to accumulate at the *third* month rate of five days per month.

As I read the statute the language

". . . shall have the power to deprive such prisoner of any portion or all of the good time gained."

allows only a taking of the days built up until then and not also of the rate of build up of future time.

The majority opinion states: "The one year sentence theoretically would terminate on October 21, 1969", that is, if all of the time served in the institution was "bad time" as distinguished from "good time". I believe the court is in error when, under the schedule set forth therein it allows good time beginning March 12, 1969, at three days, and by so doing places the defendant in the position of accruing good time *only* at the same rate beginning March 12th as if that was the first

day of his first month of confinement. It appears that by so doing the court has judicially legislated into the "good time" statute the provision that when any time is taken away from an inmate as diminution of his sentence that he automatically then starts to accrue "good time" as if he were in the first month of his sentence. It is apparent that such an interpretation is judicial legislation and is writing a provision into the good time statute which the Indiana General Assembly did not see fit to do.

For all the foregoing reasons I would grant rehearing and affirm the judgment of the trial court.

NOTE.—Reported in 267 N. E. 2d 382.